This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, the State of Ohio, appeals from an order of the Summit County Court of Common Pleas, which dismissed the indictment against Appellee, James Bennett. We reverse and remand for further proceedings consistent with this opinion.
 I.
{¶ 2} On or about February 25, 1992, Robert Mitchell was robbed. On February 26, 1992, a complaint was filed in Akron Municipal Court, alleging that Bennett had committed the aggravated robbery, in violation of 2911.01(A)(1), and a warrant for his arrest was issued. Bennett was eventually indicted on the charge on September 7, 2001, and was arrested on January 18, 2002. Bennett filed a motion to dismiss the indictment, arguing that the statute of limitations had expired and that his right to a speedy trial had been violated. The trial court held a hearing on the motion to dismiss on April 5 and 10, 2002. The trial court granted the motion to dismiss the indictment on the grounds that Bennett's right to a speedy trial was violated. This appeal followed.
 II. Assignment of Error
{¶ 3} "THE TRIAL COURT COMMITTED ERROR WHEN IT DISMISSED THE INDICTMENT IN THIS CASE."
{¶ 4} In the sole assignment of error, the State asserts that the trial court erred when it dismissed the indictment for violation of Bennett's right to a speedy trial. We agree.
{¶ 5} When reviewing an assignment of error raising a violation of a criminal defendant's right to a speedy trial, this court reviews questions of law de novo. State v. Osborn (Oct. 31, 2001), 9th Dist. No. 01CA007790, at 3. However, we must accept the factual findings of the trial court if they are supported by some competent, credible evidence.Id.
{¶ 6} Both the United States Constitution and Section 10, ArticleI of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. State v. Pachay (1980), 64 Ohio St.2d 218, 219. However, theSixth Amendment speedy trial provision has no application until a defendant becomes an "accused." United States v. Marion (1971),404 U.S. 307, 321, 92 S.Ct. 455, 30 L.Ed.2d 468. In other words, the constitutional right to a speedy trial applies in those cases where the defendant was the subject of an official prosecution or an official accusation. State v. Luck (1984), 15 Ohio St.3d 150, 153 certiorari denied (1985), 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144; see, also,State v. Selvage (1997), 80 Ohio St.3d 465, 466, fn. 1.
{¶ 7} The determination as to whether the right to a speedy trial has been violated is two-fold. First, the defendant must make an initial showing that he was prejudiced by the post-accusation delay. State v.Hall (Dec. 9, 1998), 9th Dist. No. 97CA006860, at 3, citing Doggett v.United States (1992), 505 U.S. 647, 651-652, 112 S.Ct. 2686,120 L.Ed.2d 520. A delay of more than one year is generally considered presumptively prejudicial. See Doggett, 505 U.S. at 652.
{¶ 8} Once the defendant meets the threshold showing of a "presumptively prejudicial" delay, the balancing test of Barker v. Wingo
(1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101, applies.Doggett, 505 U.S. at 652. Courts must balance four factors to determine whether a constitutional right to a speedy trial has been violated: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the resulting prejudice to the defendant. Barker, 407 U.S. at 530. Only the portion of the delay that is attributable to the government's neglect is to be weighed in the defendant's favor. State v. Triplett (1997), 78 Ohio St.3d 566, 569. If the delay is caused by the defendant's own actions, or if he contributed to the delay, this factor would weigh against him. State v. Thomas (Aug. 11, 1999), 9th Dist. No. 98CA007058, at 6.
{¶ 9} Bennett presented testimony of Deputy Dora Holt and Deputy Christopher Boyd, two deputy sheriffs from the Summit County Sheriff's Office. He also presented his own unsworn statement. Terry Bowers, who was also charged for the aggravated robbery of Mr. Mitchell and was subsequently convicted, testified for the State. The State also presented testimony from Jewel Ulrich, a safety communications technician, who enters arrest warrants in the law enforcement automated data system ("LEADS") for the City of Akron.
{¶ 10} Bowers is currently serving a sentence of five-to-twenty-five years for the aggravated robbery of Mr. Mitchell. Bowers was released on parole in November 1999, but was returned to custody after a parole violation. Bowers testified that shortly after the robbery on February 25, 1992, he and Bennett went to a bar called the Rainbow, where a barmaid informed them that police detectives had been there looking for them in connection with a robbery. Bowers testified that the two men then decided to spend the money from the robbery, stating "[w]e went out and started getting high. We partied. We figured we were caught so we are going to go spend the money." Bowers stated that the next day, he decided to turn himself in, and "[Bennett] decided he was going to leave."
{¶ 11} Ulrich testified that the warrant for Bennett's arrest was entered into LEADS on February 27, 1992, with a code that authorized a statewide pickup or arrest. In March 2001, the Summit County Prosecutor's Office authorized nationwide arrests for all outstanding warrants on charges of first and second-degree felonies. Consequently, the LEADS information on Bennett was updated to reflect the authorization for nationwide arrest on July 1, 2001. Bennett was arrested and returned to Summit County from Texas on January 18, 2002.
{¶ 12} Deputies Holt and Boyd testified that certain information is kept on file at the jail after an accused is arrested. The information includes addresses, associates, prior arrest information, information on relatives, a physical description, and a photograph. The information is available such that surrounding agencies can access it. Deputy Holt testified that Bennett's identification sheet lists some addresses in Texas for relatives, friends, and associates.
{¶ 13} In an unsworn statement, Bennett stated that in 1992, he traveled to Arkansas for employment. He listed various employers' names and dates of employment. He then moved to Texas. He stated that he retained a valid Ohio driver's license until 1995 and further stated that in order to obtain a license in Arkansas, he had to obtain a letter of clearance from the Ohio Department of Motor Vehicles, stating that the license is valid and that there are no warrants. We note that a copy of such letter from the Ohio Department of Motor Vehicles was not admitted into evidence, nor does one appear in the record.
{¶ 14} After a review of all of the evidence submitted at the hearing on Bennett's motion to dismiss the indictment, we find that the trial court erred when it determined that Bennett's right to a speedy trial was violated by the delay. The trial court determined that Bennett fled the jurisdiction in order to avoid arrest, and the evidence supports such a finding. However, the trial court also found that the State of Ohio did nothing to effect Bennett's arrest, and therefore, the trial court found that the delay was not justifiable. When a defendant flees the jurisdiction, the resulting delay in prosecution does not violate the defendant's constitutional right to a speedy trial. State v.Merriweather (May 13, 1998), 9th Dist. No. 97CA006693, at 6, appeal not allowed (1998), 83 Ohio St.3d 1429 ("Defendant's own willful actions in causing the delay by purposely fleeing from this jurisdiction preclude him from now claiming any harm."); see, also, State v. Hall (Dec. 9, 1998), 9th Dist. No. 97CA006860, at 4. The delay was caused by Bennett's own actions in fleeing the jurisdiction, and, accordingly, the delay did not violate his right to a speedy trial.
{¶ 15} The State's assignment of error is sustained.
 III.
{¶ 16} Having sustained the sole assignment of error, we reverse the judgment of the trial court and remand the cause for proceedings consistent with this opinion.
SLABY, P.J. and CARR, J. CONCUR